**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**PERRY L. MILLER**                                                              **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 1:11cv00080-SAA**

**MICHAEL J. ASTRUE
COMMISSIONER OF SSA**                                       **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Perry L. Miller for child disability insurance benefits (DIB) and for supplemental security income (SSI) payments under Section Title XVI of the Social Security Act. Plaintiff protectively filed applications for DIB and SSI on January 9, 2008, alleging disability beginning on September 1, 1989. Docket 7, p. 136-138, 154. Plaintiff's claim was denied initially (Docket 7, p. 62-76) and on reconsideration. Docket 7, p. 81-82. He filed a request for hearing (Docket 7, p. 85) and was represented by an attorney at the administrative hearing on January 6, 2010. Docket 7, p. 26-53. The Administrative Law Judge (ALJ) issued an unfavorable decision on January 22, 2010. Docket 7, p. 14-25. After receiving additional evidence from the plaintiff (Docket 7, p. 9, 642-644), the Appeals Council denied plaintiff's request for a review of the unfavorable decision. Docket 7, p. 6-9. The plaintiff timely appealed to this court. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on November 2, 1970. Docket 7, p. 136. He was 18 years old at the alleged onset of his disability and 39 years old at the time of the hearing in this case. The plaintiff attended special education classes and completed the eleventh grade. Docket 7, p. 32-33. He claims disability due to "venous insufficiency right lower extremity with persistent edema, low back pain, asthma and mental disability" (Docket 7, p. 159) and has not engaged in substantial gainful activity. Docket 7, p. 16, 34-35.

The ALJ determined that plaintiff suffered from "severe" impairments, including "asthma, venous statis, affective mood disorder, and borderline intellectual functioning" beginning in December 2002 but that the record did not contain evidence "sufficient to support an additional finding of disability for the period beginning at the alleged onset date until at least December of 2002." Docket 7, p. 16. The ALJ found that the plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926). He concluded that the plaintiff's venous statis condition did not meet Listing 4.11 and that his asthma did not satisfy Listing 3.00.

As to plaintiff's mental impairments, the ALJ found that Listings 12.04 and 12.05 were not met. He found that the "paragraph B" criteria of Listing 12.04 were not satisfied because the plaintiff experienced only "mild" restrictions in activities of daily living and difficulties in social functioning, "moderate" difficulty in maintaining concentration, persistence or pace and that plaintiff had experienced no episodes of decompensation. Because he questioned the

validity of the IQ evaluation contained in the record, the ALJ found that Listing 12.05 was not satisfied.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to

> occasionally lift 20 lbs. and frequently lift 10 lbs., walk or stand for a total of 2 hours in an 8-hour day, and sit for 6 hours out of an 8-hour day. Also, the claimant can never climb ropes, scaffolds, or ladders and must avoid prolonged exposure to temperature extremes, chemicals, dust, and fumes. In addition, the claimant has nonexertional limitations that limit him to jobs that only require simple 1, 2, or 3 step instructions or tasks and that would not demand attention to detail or complicated instructions or job tasks. Furthermore, the claimant retains the ability to maintain attention and concentration for a minimum of two hour periods at a time.

Docket 7, p. 20. The ALJ found the plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible in light of the record as a whole and noted that the plaintiff provided inconsistent explanations for why his prior jobs ended after short periods of time.[1] Docket 7, p. 9.

Based on testimony of a vocational expert [VE], the ALJ found that the plaintiff was capable of performing the requirements of jobs such as fishing reel assembler and lamp shade assembler (Docket 7, p. 24, 51), and he was therefore "not disabled" under the Act. Docket 7, p. 24-25.

After the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council, including a complete copy of the psychological examination dated July 20, 2005 (Docket 7, p. 9, 638-640) and the Hearing Officer Decision (HOD) issued on May 17, 2006. Docket 7, 264-267.

---

[1] The plaintiff testified that he could not retain a job because he could not understand what his employers were telling him to do. Docket 7, p. 35. However, records from his participation in the Ability Works program cite various other reasons. Docket 7, p.623-624.

3

He now claims that the Appeals Council erred in failing to consider the additional evidence provided. Docket 10, p. 3-7. He further argues that the ALJ erred in finding that he was not disabled under Listing 12.05C, in improperly weighing the opinions of the treating and consulting physicians and in relying on testimony from the VE that conflicted with the Dictionary of Occupational Titles (DOT). Docket 10, p. 7-18.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[5] At step three, the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical

---

[2]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

and mental demands of his past relevant work.[7]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[8]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim.  *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).  The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11]    In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).

---

[7]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[9]*Muse*, 925 F.2d at 789.

[10]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity, satisfying step one. Docket 7, p. 16. At step two, the ALJ found that plaintiff's impairments, asthma, venous statis, affective mood disorder, and borderline intellectual functioning, were severe but determined at step three that the impairments did not meet the stringent requirements set out in the listings,[12] specifically that the plaintiff did not establish mental retardation under Listing12.05C of 20 C.F.R. Part 404, Subpart P, App. 1. Docket 7, p. 17-20.

Listing 12.05 of 20 C.F.R. Part 404, Subpart P, App. 1, states, in part:

Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met

---

[12] At step three of the sequential evaluation process, plaintiff must prove by objective medical evidence that his impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

when the requirements in A, B, C, or D are satisfied. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;. . . .

In a psychological evaluation dated July 20, 2005, Dr. Jerry Rowzee assigned the plaintiff a full scale intelligence quotient of 69. Docket 7, p. 638-640. The ALJ found that this IQ score did not qualify as "valid" under Listing 12.05 because the examiner reported that the plaintiff "did not appear to make the effort he could on tasks." Docket 7, p.19. Dr. Rowzee reported that plaintiff "followed instructions and maintained his attention during all assessments. His motivation would vary as at times he did not appear to make the effort he could on tasks." Docket 7, p. 415-416.

A February 22, 2008 disability evaluation performed by Dr. Whelan yielded a full scale intelligence quotient score of 48. Docket 7, p. 338. Because Dr. Whelan noted that the plaintiff's responses "appeared to be malingered" and he "was not doing his best," the ALJ also discounted this IQ score as not "valid" under Listing 12.05. Docket 7, p. 19.

At the time of the ALJ's decision, the record did not contain any additional IQ scores.[13] The only other record evidence of the plaintiff's IQ is contained in the Disability Hearing Officer's Decision (HOD), dated May 11, 2006, that is attached as an exhibit to the plaintiff's appeal brief. Docket 10, Exhibit 1. Although the plaintiff's correspondence to the Appeals Council references the HOD, the decision is not contained in the transcript of this matter and is found only in the plaintiff's appeal brief to this court. Docket 10.

---

[13] A January 26, 2009 evaluation summary from AbilityWorks listed the 2005 IQ score but did not provide an independent IQ evaluation. Docket 7, p. 624.

7

According to the report, the plaintiff received disability benefits from 1988 through April 2006 for mental retardation and schizophrenia. Docket 10, Exhibit 1, p. 3. Benefits were ceased after the plaintiff did not appear for a hearing on May 11, 2006,[14] because "medical evidence revealed the schizophrenia appeared to be in remission" Docket 10, Exhibit 1, p. 1. The decision references a February 1990 full scale IQ score of 65 and states that the score is "still valid." Docket 10, Exhibit 1, p. 3.

The plaintiff argues that the Appeals Council erred in failing to consider the report as new and material evidence involving his "explicit request for reopening the May 17, 2006 continuing disability review." Docket 10, p. 3-7. Although the Commissioner, responds that "the Appeals Council considered the new evidence but found that it did not provide a basis for changing the ALJ's decision" [Docket 11, p. 10], the "Order of Appeals Council" that lists the additional evidence received by the Appeals Council does not include the HOD. Docket 7, p. 9.

Before the hearing on December 29, 2009, the plaintiff requested that the ALJ reopen the plaintiff's previous claim for benefits, arguing that the January 9, 2008 application was filed within two years of the denial and should be considered a timely request to reopen. Docket 7, p. 261-263. Plaintiff's counsel argued that there is good cause for reopening the claim because the plaintiff was unrepresented at the time and did not understand the importance of attending the hearing. Docket 7, p. 261-263. At the hearing before the ALJ, the plaintiff testified that he had a conflict with the first scheduled hearing and did not have transportation to the subsequent hearing where his benefits were halted. Docket 7, p. 46-48.

---

[14]The plaintiff argues that because the plaintiff was unrepresented, he did not understand the importance of attending the hearing Docket 7, p. 261-263.

The ALJ's record apparently did not contain the Hearing Officer Decision of May 17, 2006. However, the transcript of the December 29 hearing establishes that the ALJ was aware of the plaintiff's previous claim; the potential significance of the documents is, in the court's opinion, obvious. The previous claim involved a time frame after the alleged onset date and the same impairments. Still the ALJ disregarded the plaintiff's previous claim in his decision, inexplicably stating "[t]he record contains no evidence from a period prior to December of 2002." Because the ALJ an has affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts," *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996), he should have obtained evidence of the previous claim, particularly in light of (1) the plaintiff's request to reopen and (2) his decision to disregard the only IQ scores contained in the record. Therefore, the ALJ's decision was not supported by substantial evidence and should be remanded for further development of the record

Additionally, the Appeals Council should have recognized that there was a reasonable likelihood that new evidence of an IQ score that previously met the requirements of Listing12.05 could change the outcome of the ALJ's decision, *Govea v. Astrue*, 2008 WL 2952343, *4 (W.D. Tex. 2008), particularly given that the ALJ discounted the only IQ scores contained in the record. At a minimum, the Appeals Council should have demonstrated properly that it reviewed the evidence and determined that ALJ's decision remained supported by substantial evidence. *Higginbotham v. Barnett*, 405 F.3d 332, 337-38 (5th Cir 2005).

Because this case will be remanded for further proceedings consistent with this opinion,

the court need not address the merits of the plaintiff's remaining arguments[15] at this time.

A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 29th day of November, 2011.

                                                /s/ S. Allan Alexander
                                          UNITED STATES MAGISTRATE JUDGE

---

[15] Several of which appear to have at least some validity, such as the plaintiff's claim that the ALJ improperly weighed the opinions of the treating and consulting physicians. In assigning mental limitations, the ALJ relied exclusively on the opinion of Dr. Whelan. However, Dr. Whelan's opinion is not sufficiently specific to support the limitations contained in the RFC. For example Dr. Whelan stated that the plaintiff's "attention and concentration are *probably* good enough to do simple routine repetitive tasks if physically able to engage in that type of work activity" (emphasis added) and the plaintiff's "attention and concentration are quite good as he describes his daily activities and his medical problems." Docket 7, 339. Without further record evidence, such statements are not sufficient to support the mental limitations of the ALJ's RFC, particularly the ability to concentrate for a minimum of two hours at a time. The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, he is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991).

     Further, in determining the plaintiff's physical limitations the ALJ discounted the opinions of the plaintiff's treating physicians, Dr. Parsons and Dr. Medlin, without performing a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).